Smith v. McDonough 22-6131 Thank you, Your Honor. May it please the Court, Daniel Gamano, my privilege to represent Eric Case. Our position can be summarized in four words. When is enough enough? It is our position that Mr. Smith has suffered through discrimination, hostile work environment. The Court is familiar and has read the briefs about the stages and what he went through in the workplace, what he was subjected to. It is our position further that we have pled enough to get past a motion to dismiss. So the discriminatory intent against your client was on the basis of race? Is that what your assertion is? Race, color, disability, all of those things, Your Honor. When you Mr. Smith had a very good work record and a very good work performance. And who are the actors as far as the discriminatory intent? The actors that we pled include the Chief, Claude Rivers, white male, Josh Brown, white male, Kim Brewer, black female, Paul Heike and Mark Smith were white males. They were the ones who had annual leave granted to them. Daryl Lynch was... I mean, when you look at an office situation and you have a group of employees and some people have different leave opportunities than others, is that a basis for discriminatory intent? It is a basis for discriminatory intent if at the final analysis it is aimed unfairly at a minority person and that's what Mr. Smith is in this case. And that's why the claim was made. We have set forth in our brief, pages three to eight, details of all of the allegations that occurred. Okay, he was treated unfairly to what result? What was his harm? Treated unfairly in that his 120-day detail that he was approved for and went to California on... I thought we were beyond that. I thought we were down to the three-day suspension. Well... Is that it or not? Oh, that's part of it. Three-day suspension is part of it, but there's a whole series of personnel actions and threats against his job that occurred before the three-day suspension. It started with... And that would qualify as adverse actions against him as an employee? Yes, when he is approved for a 120-day detail and he needs that in order to qualify for a promotion and he is called back early on a pretext. And the pretext was that you didn't finish this report and that report and this report and that report. When you start looking at the individual reports, they were not due on September 30th when he was suddenly recalled. They're due in October and they're due in Thanksgiving. It was a pretext that brought him back. Could I ask you to focus on... This is a dismissal. The district court dismissed your complaint. So we're limited to looking at the allegations in the complaint. So, for instance, you were just discussing what I think was count four. That's your discrimination based on national origin and color. The only thing you assert in that count is that the adverse employment action was a three-day suspension. You don't assert anything else. And you also, as far as I can see, don't assert any connection between that adverse action, any facts connecting that adverse action to your claim of discrimination. The only thing you say is in paragraph 64, such action by national origin and color violated provisions of the OKCVA labor relations manual. That's the only connection that you make there on count four. I'm not sure what... That's not attached to the complaint. I'm not sure what the labor relations manual says or what provisions you're talking about. But I think there's no nexus here. There's no... There's nothing to connect the three-day suspension, which is the adverse action, to intentional discrimination or an inference of intentional discrimination, which is what you need to plead. Well, and what we endeavored to do in the amended complaint was to plead the entire series of events that occurred. And the three-day suspension occurred at the end of those events and encompasses and carried out and continued all of the intentional actions that were taken against Mr. Smith in the workplace. But, of course, we're... I mean, you've got several counts here. You've got another count, three, that alleges he was discriminated against based on his handicap. And, again, I don't... You say he's a service-connected disabled veteran qualified to perform essential functions and that he... But he wasn't... He didn't apply or seek any promotion, did he? He did not get the opportunity to file for a promotion because the 120-day detail... Well, I understand that's... You're talking now about essentially a term and condition of his employment. But your handicap count three suggests he was denied... Specifically suggests he was denied a promotion. That was the adverse action. And that allegation is contained and carried out within all the other allegations. He did not make a specific promotion and was passed over because he never got to finish the detail and to qualify. And it's... So this is not true. He didn't suffer an adverse action because of a disability and was passed over for promotion. That's not accurate. The adverse action was he did not get to finish the detail that they had approved him for. He was called back on a pretext and, therefore, did not qualify for any kind of promotion in the future. That's why they had given him the detail and he had requested it in the first place. And so what we have in Mr. Smith's case is a whole series of job actions, things that happened in the workplace, threats against him by his supervisors, overt threats to pull the rug out from under on Mr. Smith. And I'm going to do things to fire Mr. Smith. Counsel, I think the questions that are being directed to you is to help us sort out which of these events would qualify under a Title VII claim as an adverse employment action. And we have the three-day suspension. And I understand that you're saying a number of other things happened to him. But did any of those other things that happened to him qualify under the law as an adverse employment action? I think the totality of them does. Well, I'm asking if you could kind of break them down. Okay. And then maybe if you want to go with your totality argument, I'd be interested in hearing some authority for that. The authority that I'm using is the case Ashcroft v. Iqbal, which talks about Federal Rule 8 on how you plead a case. And Federal Rule 8 requires a short and plain statement of the claim showing that the pleader is entitled to relief. It does not require at this stage under Federal Rule 8 a detailed factual allegation. And under Iqbal, it even goes further than that and says even if a serious judge may have doubts about it, unless it is such a fantastical claim about people from Mars and traveling to Pluto, then it passes muster under Federal Rule 8. Well, let me give you an example. And I actually was looking more for a Title VII case. But at one point, he was reassigned to the telephone operating room. Another incident that happened at work. Okay. But my question is, is that sufficient as an adverse employment action for a Title VII claim? I think it is because it happens as part of the series of events that happened to this employee. And the VA departed from their normal course of action. But did he suffer a loss of wage or job title or anything like that? To be honest with the court, he did not. Right. But the point was. So that's the magical thing about an adverse action. It's got to be a little bit more than, you know, life is hard at work. You know, that's why we call it work. I understand. And when you take what happened at him being transferred to the phone operating, and they did that contrary to the normal practice at the Oklahoma City VA, if there's a perpetrator, they're the ones that are moved, not the victim. So what we have tried to do is to plead under Federal Rule 8, the allegations that are necessary to show short and plain statement of the case. That's what we have tried to do. There's lots of time later if there's discovery and motions and things that can all be taken up. But at this point, we think we have pled enough. This wasn't dismissed on the basis of Rule 8. This was a 12B motion. This was a failure state of claim. Right. And I think you have to read those rules together. But we rely on the rule and the language of Rule 8 and Ashcroft v. Iqbal, as I have said, I would request respectfully to reserve the remainder of my time. Thank you. Thank you, Counsel. May it please the Court. Kara Rodriguez on behalf of Attlee's Secretary McDonough. Appellant did not lack guidance on how to plead cognizable claims in this case. He had the benefit of the first motion to dismiss and the thoughtful analysis and order of the District Court on that motion, which permitted him leave to amend to cure deficiencies noted in the judge's order as to both his Title VII and his Rehabilitation Act claims. Rather than cure those deficiencies, however, appellant effectively submitted the same complaint with at least one factual allegation notably omitted and with the addition of little new information. Against that backdrop, the District Judge's order on Secretary McDonough's motion to dismiss is not surprising. Appellant's amended complaint still suffered significant pleading deficiencies. First, what bases? The adverse actions alleged in his complaint are as follows. A three-day suspension, one of them. A generalized hostile work environment, and a denied promotion for which there are no factual allegations to support a denied promotion. And we know, based on National Railway Passenger versus, I believe it's Morgan if I can read my own writing, that would be 536 U.S. 101, that discreet acts like failure to promote are easy to identify. They certainly are not aspirational in nature. Even the move to the phone operating room would not qualify as an adverse action in this case because based on standards such as Iqbal, based on Twombly, read together with this court's holdings from Kalik and Mormon, we know that we use prima facie cases to sift the allegations that are alleged to determine whether those claims make them over the line from conceivable to plausible. And in this case, reading the factual allegations alleged around the reassignment to the phone operating room, it is as easy to read a non-invidious reason for the move to the phone operating room as it is to read an invidious one. He alleges that on November 8th, he was assigned to light duty, and on November 9th, he was moved to the phone operating room. And as he concedes today, there was no loss of promotion, no loss of wage. Who are the actors? Couldn't it be read as a demotion, the transfer to the operating room? We don't have factual allegations suggesting it was a demotion, Your Honor. And reading that non-invidious purpose that we can based on Iqbal, indicating that when we have a non-invidious reason that we can read into factual allegations, we could assume that, but there's nothing to suggest it. You could have an adverse employment action that the employer might be able to justify for non-invidious reasons, but it's still an adverse employment action, isn't it? And he was a supervisor. He was a supervisor, but that gets to another point. Looking at his supervisor in this case, Your Honor, he was the individual to have alleged to have done all of the conduct that is alleged here. The six comments, the hostile work environment, the suggestion of the three-day promotion, his alleged supervisor is also an African-American male. Now, we don't assume that an African-American male might not also discriminate against an African-American male. We know based on ONCAL that's not an assumption that we make, but it does decrease the plausibility of such a claim. Furthermore, even with respect to the alleged assault and battery, there's nothing to suggest that his first-line supervisor did any of that for any hostile or any animus-related reason. There's nothing to suggest that the move to the phone operating room had any link to his race, to his gender, to his disability. There's simply nothing there to make that connection. So even if the move to a phone operating room could itself be considered an adverse employment action, even if it was done by his supervisor, there still is that missing link. The same would be true for his Title VII hostile work environment claims. There's nothing that links any of those comments or any of those actions to any invidious reason except for a generalized harassment claim. He's consistently pled six comments that, again, his supervisor, as Your Honor points out, made, but those are comments that are generalized in nature. They're most often directed towards the laundry facility itself. They're directed towards work being conducted in the facility. There's nothing that actually creates the link to his race, to his national origin, to his disability. None of the protected classes that appellant indicates he is a part of, he self-identifies. There could be a nexus created through comparator treatment, but this also is something of a moving target in this case and fails to support the link. Comparator analysis requires some facts showing that they have the same supervisor, were subjected to the same standards regarding discipline, and engaged in conduct of comparable seriousness, but that analysis fails on multiple fronts here. First, appellant suggests Ms. Brewer and Mr. Smith were treated more favorably, but appellant alleges that they were his subordinates, so categorically they are not comparators. Even so, he suggests that they were treated more favorably with respect to leave, and this gets confusing. Appellant never alleges that he was denied leave. Leave is not one of the adverse actions that he actually indicates is an adverse action in his complaint or his amended complaint. Even if the allegation is that Mr. Lynch, that first-line supervisor, was somehow micromanaging appellant's oversight of appellant's subordinate's leave, this is problematic. Appellant did not clearly argue or brief this below. As appellant's supervisor and his second-line supervisor of the laundry facility, Mr. Lynch, one would assume, could somehow manage that leave within the facility to ensure that it was fully staffed. And third, appellant's factual allegations are inconsistent here. He alleges that his authority around leave was somehow subverted, but he also alleges that he wasn't countermanded, and that no one complained regarding how he, the appellant, was staffing the facility. Internally inconsistent allegations can be set aside because they are not well pled. Those are at paragraph 17 through 19 of the amended complaint. With respect to Ms. Brewer specifically, the comparator on his sex discrimination claim, appellant alleges at paragraph 36 of his amended complaint that she was permitted not to do certain tasks because she is a woman. Now we don't know if this is supposed to be a direct statement, because the allegation is not clear. But even assuming that it's true, the very next sentence states, such favoritism was not done for other female employees or for the plaintiff. He says other women, presumably two or more, also received less favorable treatment. So appellant's allegation regarding Ms. Brewer does not support appellant's sex discrimination claim. The allegation is not that appellant was treated less favorably than women, but that he was treated less favorably than a particular woman and she was his subordinate. Moreover, the allegation states that favoritism correlated to work assignments. But again, he does not complain about work assignments here. That gets back to what actually was alleged in his amended complaint as to his adverse actions. Now on appeal and not briefed below, appellant argues that other white males, and he names Paul Huck here, were also granted leave. But appellant was also Mr. Huck's supervisor. And the factual allegations do not support the arguments raised. He cannot link, as Your Honor points out, his protected classes to discrimination through comparator analysis. There's nothing to supply the nexus between the generalized work grievances he lists, any of them, whether individually or in the aggregate, to his actual protected classes that he lists. And he was twice presented, the district court with a complaint and an amended complaint, an opportunity to get those claims over the line. That's all I have, unless you have any questions for me. Thank you, counsel. Thank you. Very briefly on behalf of the appellant. 12B-6 is an important motion, important federal rule, but it also must be read in connection with Federal Rule 8, which I have been through before. We're not here on a motion for summary judgment that was judged below. We're here simply on a motion to dismiss, and we did plead enough facts to show a plausible cause of action, and that's what's required at this stage. As an example, Title VII, all you need to do is plead you're a member of a protected class, you suffered an adverse personnel action or a series of adverse personnel actions in this case, and the actions give rise to an inference of discrimination. We think we have done enough to do that and to defeat a motion to dismiss. We ask that the decision below be reversed, this case be remanded for more processing, and I would yield back the remainder of my time. Thank you. Thank you, counsel.